**Forest Stanley BUTLER, Appellant,**

v.

**Constance Lanell BUTLER, Appellee.**

No. 13–97–414–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 20, 1998.

Rehearing Overruled Oct. 1, 1998.

Pamela E. George, Houston, for Appellant.

Lenette Mandola Terry, Terry & Terry, Kelly McClendon, Angleton, for Appellee.

Before SEERDEN, C.J., and HINOJOSA and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

Appellant Forest Stanley Butler (Stan) challenges the property division accompanying his divorce from appellee Constance Lanell Butler (Connie). Stan and Connie were married in 1971 and divorced in March, 1997. They had two children who were nineteen and seventeen at the time of the divorce. Stan admitted to three extra-marital affairs during the marriage, and admitted to fathering a child with one of those women. Stan provided some financial support for the woman and her child.

Stan had a Ph.D. in psychology and was a licenced counselor. He also did welding work on the side. He testified that his annual income was $44,000, although his bank records indicated that he made deposits of $6400—$10,000 each month in 1996. Stan attempted to explain the disparity between the deposits and his stated income, but his explanations failed to account for the full difference.[1] Connie had a B.S. in education and had worked as a school teacher, making $28,000 during 1994–95, her last year working full-time. She testified that she quit working full-time because her health was bad and because her parents, who were also in bad health, needed her to care for them. She worked occasionally as a substitute teacher, making $3600 in 1996.

Stan complains of three aspects of the trial court's division of their property. First, Stan argues that the trial court erred in awarding Connie half of his future earnings from his psychological counseling business, which should have been considered his separate property. Second, he argues that the trial court erred in awarding the full $30,000 community reimbursement from his separate property to Connie. Lastly, Stan argues that the trial court erred in not factoring the attorney's fees he was ordered to pay into its proportionate division of the community estate. We reverse the division of the trial court and remand for further proceedings.

The trial court has broad discretion in dividing the property in a divorce action and its division will not be disturbed absent an abuse of discretion. *Bradley v. Bradley,* 725 S.W.2d 503, 505 (Tex.App.—Corpus Christi 1987, no writ). The trial court's mischaracterization of property will require a reversal only if we determine that the division of the property made was, because of the legal error upon which it was based, so unfair as to constitute an abuse of discretion. *Id.* In other words, appellant must show that, due to the trial court's legal error, the division of the property was so disproportionate as to be manifestly unfair. *Id.* Furthermore, appellant must show that the trial court would have probably made a different division of the property if it had been properly characterized. *Id.*

The trial court is charged with dividing the estate in a manner that is "just

---

1. Stan testified that his mother gave him approximately $300 a month. He also testified that he occasionally sold pieces of oil field equipment, but admitted that he had sold his last piece in 1993. He testified that the remainder of the additional money "probably came from savings." Stan did not explain why he would withdraw money from his savings to re-deposit each month.

and right, with due regard for the rights of each party and any of the children." Act of June 16, 1981, 67th Leg., R.S., ch. 712, 1981 Tex. Gen. Laws 2656, *recodified by* Act of April 17, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Sess. Law Serv. 8, 33 (current version at TEX. FAM.CODE ANN. § 7.001) (Vernon Supp.1998).[2] Among the factors the court may consider in reaching a "just and right" division are the spouses' earning capacities, relative financial conditions, and the fault of the parties. *Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981). However, the trial court does not have the power to divest one spouse of separate property and award that separate property to the other spouse. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 142 (Tex.1977).

Stan offered his counseling services under the business name "Alvin Counseling Service." It appears from the record that Alvin Counseling Service was a sole proprietorship. Stan argues that the trial court improperly awarded Connie half of his future earnings under the name Alvin Counseling Service, which should have been left solely to him as his separate property. The trial court awarded Connie

> 50% of the Petitioner's [Stan's] business known as Alvin Counseling Service, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, accounts, goods, and supplies; all personal property used in connection with the operation of such business; and any and all rights and privileges, past, present, or future, arising out of or in connection with the operation of such business.

At trial, Stan objected and questioned the court's "future" award. The trial court explained that it intended its award to mean "whatever income that counseling service receives from any source, its 50% hers, as well as the liability."

Community property consists of the property, other than separate property, acquired by either spouse *during marriage.* Act of May 14, 1969, 61st Leg., R.S., ch. 888, § 1, 1969 Tex. Gen. Laws 2707, 2726, *recodified by* Act of April 17, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Sess. Law Serv. 8, 16 (current version at TEX. FAM.CODE ANN. § 3.001) (Vernon Supp.1998) (emphasis added). Stan's income through Alvin Counseling Service after his divorce is not property acquired during marriage. Therefore, it is not community property and Connie has no interest in it. The trial court properly noted that "all furniture, fixtures, machinery, equipment, inventory, cash, accounts, goods, and supplies; all personal property used in connection with the operation of such business; and any and all rights and privileges, past, present ... arising out of or in connection with the operation of such business" were acquired during marriage, and therefore those assets were properly included in the community estate. However, "future" acquisitions are solely Stan's separate property. Therefore, the trial court erred in awarding Connie a portion of the future earnings of Alvin Counseling Service, which was Stan's separate property.

■ Next, Stan challenges the court's award of $30,000 to Connie as reimbursement for his expenditures on his daughter born to another woman during Stan and Connie's marriage. The trial court found that the value of the community estate was $101,042.23, and expressed the intention to divide the community estate 60% for Connie and 40% for Stan.[3] The trial court also found that Stan spent "at least $30,000 of community funds for the support" of his illegitimate child, and that it would be "just and right to award the entire $30,000 reimbursement" to Connie. Stan contends that, because his obligation to provide child support is a debt acquired during his marriage to Connie and because it is an expense for "living ex-

2. The 1997 recodification became effective April 17, 1997, but did not apply to proceedings already pending on the effective date. Act of April 17, 1997, 75th Leg., R.S., ch. 7, § 4, 1997 Tex. Sess. Law Serv. 8, 43. The original petition for divorce in this case was filed on July 17, 1996, and the judgment was dated March 21, 1997. Therefore, citation to the former law is appropriate.

3. The trial court explained that the division would favor Connie because she had less earning capacity than Stan and because Stan's adultery and abuse were underlying causes of the divorce.

penses," it is a community obligation and no right of reimbursement exists. Stan also contends that, even if a reimbursement was proper, it was improper to award the entire amount to Connie.

The right of reimbursement is an equitable right that arises when the community estate is used to benefit the separate estate of one of the spouses without the community estate receiving a benefit. *Vallone v. Vallone,* 644 S.W.2d 455, 458–59 (Tex. 1983); *Pelzig v. Berkebile,* 931 S.W.2d 398, 400 (Tex.App.—Corpus Christi 1996, no writ). Stan is correct that no right of reimbursement attaches to expenditures for living expenses. *Norris v. Vaughan,* 152 Tex. 491, 260 S.W.2d 676, 683 (1953). However, the exception for living expenses only applies to the living expenses of the marital family, for which each spouse is obligated to provide, even from separate property if necessary. *Pelzig,* 931 S.W.2d at 400; *cf. Norris,* 260 S.W.2d at 683 (husband had duty to expend separate funds for necessary living expenses of community, such expenditures were considered gift to community and husband had no right to reimbursement for these expenditures). We find no authority for Stan's contention that the living expenses of a child born outside the marriage are exempt from reimbursement under the same "living expenses" obligation that a spouse has toward the marital family.

Next we consider Stan's argument that his child support obligations were a debt of the community. Debts established during marriage which do not involve the exclusive use of one spouse's separate property or sole management community property may be satisfied from joint management community property. Act of May 14, 1969, 61st Leg., R.S., ch. 888, § 1, 1969 Tex. Gen. Laws 2707, 2730, *recodified by* Act of April 17, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Sess. Law Serv. 8, 18 (current version at TEX. FAM.CODE ANN. § 3.202) (Vernon Supp.1998); *Broussard v. Tian,* 156 Tex. 371, 295 S.W.2d 405, 406 (1956); *Dan Lawson & Assocs. v. Miller,* 742 S.W.2d 528, 530 (Tex.App.—Fort Worth 1988, no writ). However, this presumption can be rebutted by showing that the creditor agreed to look solely to the separate estate of the obligor for satisfaction. *Cockerham v. Cockerham,* 527 S.W.2d 162, 171 (Tex.1975); *Dan Lawson & Assocs.,* 742 S.W.2d at 530.

A spouse's child support obligations depend on the spouse's net resources, as determined according to section 154.062 of the Texas Family Code. The net resources of a spouse of the child support obligor are not considered. TEX. FAM.CODE ANN. § 154.069(a) (Vernon 1996). We conclude that, because Connie's net resources are excluded from consideration in setting Stan's child support obligation, the obligee is restricted to looking only to Stan for satisfaction of Stan's child support obligation. Therefore, a reimbursement to the community estate of the funds expended to satisfy Stan's individual child support obligation was justified.

Stan argues that our decision in *Pelzig* prohibits reimbursement to the community of funds expended to meet the child support obligations of one spouse. However, the facts of *Pelzig* must be distinguished from the facts of this case. In *Pelzig,* the husband had pre-existing child support and alimony obligations when he married for a second time. The wife had full knowledge of these obligations and did not seek to prevent their satisfaction from community funds before or during the marriage. We held that the second wife was not entitled to reimbursement for money spent to meet the pre-existing support obligations. *Pelzig,* 931 S.W.2d at 400. In this case, the child support obligation did not materialize until after the marriage commenced, and Stan hid the existence of the child from his wife, satisfying his child support obligations out of community funds without his wife's knowledge.

Reimbursement is an equitable right. *Vallone,* 644 S.W.2d at 458–59. In a somewhat analogous case, the Dallas court of appeals held that the trial court did not abuse its discretion in awarding equitable reimbursement to the community of funds the husband spent during the marriage on women other than his wife. *Morrison v. Morrison,* 713 S.W.2d 377, 379 (Tex.App.—Dallas 1986, writ dism'd). We hold that the trial court did not abuse its discretion in

determining that an equitable reimbursement to the community estate was merited under the facts of this case.

We next consider Stan's argument that the trial court erred in awarding the entire reimbursement to Connie. The trial court found that the community estate was worth $101,042.23, not counting the $30,000 reimbursement. The trial court erred in not considering the $30,000 reimbursement to be part of the community estate, because, once this sum was "reimbursed," it added $30,000 to the community estate. The trial court stated it's intention to award 60% of the community estate to Connie and 40% to Stan. The trial court divided the marital estate with property worth $66,174.87 being awarded to Stan, and property worth $34,849.36 being awarded to Connie. The trial court then ordered Stan to pay Connie $25,765.18 in monthly installments, purportedly to bring the awards to the desired 60/40 split. To these monthly installments, the trial court added the $30,000 reimbursement. The court also ordered Stan to pay attorney's fees to Connie of $7000.[4]

 We conclude that the trial court should have based its division on a community estate of $131,042.23 ($101,042.23 in property plus $30,000 that should be reimbursed from Stan's separate property to the community). The trial court awarded Connie $97,614.54 from the community estate ($34,849.36 in property, plus $30,000 reimbursed to the community estate from Stan's separate estate, plus $25,765.18 in "equalizing" monthly payments, plus $7000 in attorney's fees), and awarded Stan $33,409.69 ($66,174.87 in property, minus $25,765.18 in "equalizing" monthly payments, minus $7000 in attorney's fees). As such, Connie received approximately 75% of the community estate and Stan received approximately 25%.

To warrant reversal of a trial court's division of community property, an appellant must show that the division was so disproportionate as to be manifestly unfair, and that the trial court probably would have made a different division of the property if it had been properly characterized. *Bradley,*

---

4. Attorneys fees awarded in a divorce proceeding should be considered as part of the equitable division of the community estate. *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1005 (.1950);

725 S.W.2d at 505. The trial judge made findings that would support an unequal distribution of property, such as disparate earning capacity, and that Stan was at fault for his adultery and abuse during the marriage. The trial judge indicated that, due to these factors, he intended to divide the community property 60/40 with Connie taking the larger share. However, due to the trial court's errors, the actual division was approximately 75/25. We hold that this division was manifestly unfair, and, had the trial court properly characterized the community property, it would have made a different division.

 When error is committed in the division of property upon divorce, a court of appeals is not permitted to either render a different division or to remand only certain portions of the marital property for a new division; rather it must remand the entire community estate for a new division. *Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex.1985). Therefore, the property division of the trial court is reversed in its entirety and remanded to the trial court for further proceedings consistent with this opinion. The remainder of the trial court's opinion granting a divorce and setting terms of child custody remains in place.

---

*Grossnickle v. Grossnickle,* 935 S.W.2d 830, 847 (Tex.App.—Texarkana 1996, .writ denied); *Abrams v. Abrams,* 713 S.W.2d 195, 197 (Tex. App.—Corpus Christi 1986, no writ).