Opinion issued August 22, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00594-CV

————————————

**SAHEED BELLO, Appellant**

**V.**

**KOREN BELLO, Appellee**

---

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-19229**

---

## MEMORANDUM OPINION

Saheed Bello appeals from a decree of divorce, in which the trial court dissolved his marriage to Koren Bello after conducting a bench trial. On appeal, Saheed contends that (1) insufficient evidence supports the trial court's

determination of his income and the monthly amount of child support payments, (2) the trial court abused its discretion in awarding an unequal division of the marital property to Koren, (3) the trial court erred in denying his motion for a new trial, and (4) the trial court erroneously failed to file findings of fact and conclusions of law. We affirm the judgment of the trial court.

## Background

Saheed and Koren were married in 2006. Before separating in 2009, they had one child. In March 2009, Koren filed a petition for divorce. At the bench trial in 2011 before an associate judge, Koren testified that Saheed had been abusive toward her during their separation while sharing custody of the child and that Saheed failed to bond with their child after her birth. She testified that at one point during the divorce proceedings, she had called the police to force Saheed to leave during an altercation. Saheed, however, was not arrested and no charges were filed. According to Koren, Saheed had rarely touched or cared for their daughter, and, while they were separated, he often would not appear for scheduled visits with her. Sometimes the child would return from a visit with a soiled diaper or wearing pajamas.

Koren testified that Saheed worked as a mechanic and had a business buying and selling cars, shipping them between America and Africa. She testified that before the separation, Saheed earned between $2,000 and $6,000 each month

between his business and his mechanic work. The couple had possessed several cars, but only two remained in Koren's possession. She testified that the couple had two mortgages on their house, with one monthly payment for $1,050 and one for $258, but Saheed failed to pay half of these amounts for the last month he stayed at the house.

Saheed testified that he was unemployed at the time of trial because he was terminated from his mechanic job in November 2010. He testified that he is a full-time student, but he would still occasionally buy and ship items to Africa. He estimated that he received $15,000 each semester in student loan funds. He also testified that in the past he owned a cybercafe in Africa and an American automotive sales business that shipped cars to Africa, but the cybercafe no longer operated, and he closed down the car sales business in 2009. He testified that he had a good relationship with his daughter, and he knew how to feed her, dress her, and change her diapers. He testified that Koren had entrusted him with the child's care on numerous occasions.

Koren introduced banking statements from an account that Saheed identified as the account for his d/b/a, Sahbell International Services. The statements reflected his monthly deposits and withdrawals from January 2010 to February 2011. According to his testimony, the statements show that total deposits in the account were $69,245.28 and total withdrawals were $70,626.40, for a "balance"

3

of negative $1,381.12. Saheed testified that he used the account for both personal and business reasons: He bought items for his friends in Africa with it, and he paid his rent, child support, and personal expenses with the account. The funds in the account came from an associate in Africa and his student loan checks.

At the conclusion of the hearing, the associate judge made several oral rulings. First, he granted the divorce and made the parties joint managing conservators, with the mother receiving the exclusive right to determine the child's residence, receive child support, and make medical and educational decisions. The associate judge also ordered Saheed to pay $845 in monthly child support. Koren was awarded the two cars in her possession, all of the funds in her retirement account, and all of the funds in her 401(k) retirement account. Saheed was awarded all of the funds in any accounts in his name, all of the interest in his businesses, all tools and automotive parts, and all of his African clothing. The associate judge awarded all of the interest in the marital residence to Koren, including all of its debt. Finally, after Saheed's counsel objected that the child support award was larger than 20 percent of Saheed's income, the associate judge stated that he "found his annual income is $67,000 per year" based on the testimony and "the trustworthiness of the witnesses." *See* TEX. FAM. CODE ANN. § 154.062(a) (West Supp. 2012) ("The court shall calculate net resources for the purpose of determining child support liability as provided by this section.").

4

After the trial but before entry of judgment, Saheed filed a request for the trial court to file findings of fact and conclusions of law. Specifically, Saheed requested findings on the value of Saheed's income and the community property awarded to Koren. The final divorce decree was entered three weeks later, on April 18, 2011. On May 14, 2011, Saheed gave notice that the findings of fact and conclusions of law were past due.

Three days later, Saheed filed a motion for new trial, asserting, among other complaints, that the associate judge erred by limiting his case-in-chief to 50 minutes, limiting time for testimony, allowing Koren to keep all of the funds in her retirement and 401(k) accounts, dividing the community property, and determining that he had an annual income of $67,000, when his income was only $22,000. The trial court held a hearing on Saheed's motion for new trial. Saheed asked to present a summary of his account deposits to demonstrate that his income was only $22,000, but the trial court denied the request and the motion for new trial.

Saheed then filed this timely appeal.

## Analysis

### I.    Child support

In his first issue, Saheed contends that the trial court erred because it failed to set the standard child-support award in accordance with the Texas Family Code.

5

Specifically, he argues that the trial court abused its discretion by relying upon insufficient evidence in setting the amount of child support.

The purpose of child support is to help a custodial parent maintain an adequate standard of living for a child. *Farish v. Farish*, 982 S.W.2d 623, 627 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (citing *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991)). The determination of the amount of child support to be paid is left to the discretion of the trial court and will not be disturbed on appeal absent a clear showing of abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re L.R.P.*, 98 S.W.3d 312, 313 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Worford*, 801 S.W.2d at 109; *McGuire v. McGuire*, 4 S.W.3d 382, 384 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Sufficiency challenges are not independent points of error in the child-support context, but are "incorporated into an abuse of discretion determination." *McGuire*, 4 S.W.3d at 387 n.2; *see Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We employ a two-pronged inquiry in such cases: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Moreno v. Perez*, 363 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court does not abuse

its discretion when there is some evidence of a substantive and probative character to support its order. *Newberry*, 146 S.W.3d at 235.

In determining a child-support award, section 154.062 of the Texas Family Code requires a court to calculate "net resources" for the purpose of determining child-support liability. TEX. FAM. CODE ANN. § 154.062(a). "Courts may calculate net resources on 'imprecise information,' and the trial court has "broad discretion in setting child support." *Ayala v. Ayala*, 387 S.W.3d 721, 727 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Net resources" include all wage and salary income, self-employment income, and all other income received. TEX. FAM. CODE ANN. § 154.062(b). The obligor is required to furnish information sufficient to accurately identify his net resources and ability to pay child support. *In re N.T.*, 335 S.W.3d 660, 666 (Tex. App.—El Paso 2011, no pet.); *Garner v. Garner*, 200 S.W.3d 303, 306 (Tex. App.—Dallas 2006, no pet.); *see* TEX. FAM. CODE ANN. § 154.063. "There must be some evidence of a substantive and probative character of net resources in order for the court to discharge its duty under section 154.062." *Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *Newberry*, 146 S.W.3d at 236); *Ayala*, 387 S.W.3d at 727.

The trial court is not required to accept the obligor's evidence of income and net resources as true. *In re N.T.*, 335 S.W.3d at 666; *Hardin v. Hardin*, 161 S.W.3d 14, 23 (Tex. App.—Houston [14th Dist.] 2004, no pet.), *judgm't vacated*,

7

*op. not withdrawn*, No. 14-03-00342-CV, 2005 WL 310076 (Tex. App.—Houston [14th Dist.] Feb. 10, 2005, no pet.). Instead, the trial court may properly determine that an obligor has higher net resources based on testimony by the obligee and other evidence in the record. *In re N.T.*, 335 S.W.3d at 666. Moreover, a trial court may order the obligor to pay child support beyond the amount the obligor's income would ordinarily indicate if he could potentially earn more money but has chosen to remain underemployed or unemployed. *Id.* (citing TEX. FAM. CODE ANN. § 154.066); *see also Iliff v. Iliff*, 339 S.W.3d 74, 82–83 (Tex. 2011) (holding trial court has discretion to set child support award based on obligor's earning potential when obligee demonstrates intentional underemployment).

As the obligor, Saheed bore the burden to present sufficient information of his net resources and ability to pay child support. The only information he presented to the trial court concerning his income and net resources was disclosure and disbursement statements demonstrating that he received student loans for between $2,985 and $5,224 per semester at two different colleges. While he testified that he had been terminated from his previous employment, Saheed also testified that he still bought items and shipped them to Africa.

Koren, however, presented evidence and testified to Saheed's income and ownership of several businesses. She testified that during the marriage Saheed had earned between $2,000 and $5,000 monthly when he was running his trading

8

business and working as a mechanic, even when not regularly employed, and that he earned between $3,000 and $6,000 monthly when he was regularly employed and running the trading business. Koren also testified that Saheed owned several businesses in both America and Nigeria, although Saheed testified that some of those businesses were no longer operating. Koren introduced monthly bank account statements from Saheed's Sahbell International business showing that he made deposits of approximately $69,000 and withdrawals of approximately $70,000 in that account during 2010. These deposits are probative of Saheed's net resources. *See Baxley v. Baxley*, No. 01-10-00570-CV, 2011 WL 2504216, at *3 (Tex. App.—Houston [1st Dist.] Jun. 23, 2011, no pet.) (holding that deposits in a combined business and personal bank account were substantial and probative evidence of net resources); *Burney v. Burney*, 225 S.W.3d 208, 214 (Tex. App.— El Paso 2006, no pet.) (holding that trial court had proper evidentiary basis in relying on bank account deposits in determining obligor had higher net salary than indicated by his tax returns).

Based on this testimony and evidence, the trial court ordered $845 in monthly child-support payments, which corresponds to an implied finding that Saheed had at least $50,700 in annual net resources (or $4,225 per month) pursuant to the standard child-support award schedule. *See* TEX. FAM. CODE ANN. § 154.125 (providing that the court shall presumptively order that an obligor pay

9

20% of monthly net resources in child support for one child). Koren presented testimony that Saheed had often earned more than $4,225 a month during the marriage, and that he had owned several businesses. Saheed testified that he had closed several of these businesses, but he still operated his Sahbell Interntional trading company. The statements for the Sahbell account demonstrated that more than $69,000 had been deposited in the account in 2010, which could justify a finding that Saheed earned more than the $50,700 in annual income the trial court impliedly found.

Because the determination of the child-support award was supported by the testimony of Koren and Saheed and the account statements introduced at trial, all of which is proper evidence of net resources when the obligor has failed to produce his own evidence, the trial court's decision was supported by some evidence of a substantial and probative character. *See In re N.T.*, 335 S.W.3d at 666–67 (holding that given appellant's failure to produce documents of his earnings, the trial court was within its discretion in basing its net resources determination on the conflicting testimony of the parties). Accordingly, the trial court did not abuse its discretion in its determination of the amount of child support. We overrule Saheed's first issue.[1]

---

[1] Saheed also complained in his motion for new trial that he was not given enough time to explain his annual income. But Saheed has failed to preserve this

10

## II.  Division of community property

In his second issue, Saheed contends that the trial court erred in awarding an unequal share of the couple's community property to Koren.

The Family Code requires the trial court to divide the "estate of the parties" to the marriage as "the court deems just and right, having due regard for the rights of each party."  TEX. FAM. CODE ANN. § 7.001 (West 2006); *see Hailey v. Hailey*, 176 S.W.3d 374, 380 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  We review property-division issues for abuse of discretion.  *See Schlueter v. Schlueter*, 975 S.W.2d 584, 586 (Tex. 1998).  Wide latitude and discretion is vested in the trial court to divide the community estate, and we presume that the trial court exercised that discretion properly.  *Id.* at 589; *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Vannerson v. Vannerson*, 857 S.W.2d 659, 668 (Tex. App.—Houston [1st Dist.] 1993, writ denied).  A trial court abuses its discretion when it acts arbitrarily or unreasonably, and without reference to any guiding rules or principles.  *See Hailey*, 176 S.W.3d at 380; *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

When dividing community property, the trial court may consider several factors, including each party's earning capacity, abilities, education, business opportunities, physical health, financial condition, age, and size of separate estates,

---

complaint because he did not object on this basis during the trial.  *See* TEX. R. APP. P. 33.1 (preservation requires a timely request, objection, or motion).

11

as well as any future needs for support, custody of any children, reimbursements, gifts to a spouse during marriage, fault in the breakup of the marriage, length of the marriage, attorney's fees, and a spouse's dissipation of the estate. *See Murff*, 615 S.W.2d at 698; *Hailey*, 176 S.W.3d at 380; *Alsenz v. Alsenz*, 101 S.W.3d 648, 655 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). If pleaded, the trial court may consider the "fault" of either party, but the trial court may not make an unequal division to punish the party at "fault." *See Twyman*, 855 S.W.2d at 625; *Smith v. Smith*, 836 S.W.2d 688, 693 (Tex. App.—Houston [1st Dist.] 1992, no writ) (citing *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980)). We defer to the trial court's factual resolutions and any credibility determinations that may have affected those resolutions, and we may not substitute our judgment for the trial court's in those matters. *See Murff*, 615 S.W.2d at 700 (noting that in divorce bench trial, trial court has opportunity to observe spouses and assess their needs and credibility). The trial court had "the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic." *Id.*

Each party in a divorce proceeding has a burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division. *Murff*, 615 S.W.2d at 698–99; *Aduli v. Aduli*, 368 S.W.3d 805, 820 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "When a party does not

12

provide values for property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide the property." *Aduli*, 368 S.W.3d at 820; *see also Todd v. Todd*, 173 S.W.3d 126, 129 (Tex. App.—Fort Worth 2005, pet. denied); *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.); *Vannerson*, 857 S.W.2d at 670.

The trial court awarded Koren the marital residence, which had an undetermined value and unknown amount of equity, all of her retirement account with a value of approximately $16,000, and all of the assets in her 401(k) account with a value of approximately $2,000. Koren was also awarded two cars that were in her possession at the time of the divorce and all of the personal property in her possession. Saheed was awarded sole possession of his businesses, all personal property in his possession, a washer and dryer set, all accounts bearing his name, any vehicles besides the cars awarded to Koren, and all his tools, automotive parts, and his African clothing. Saheed argues that the award to Koren is "in essence, the entirety of the community property estate," and that the trial court made this unequal division without following any legal rules or principles.

Saheed, however, cannot prevail on his complaint on appeal about the unequal award of the marital property because he cannot demonstrate from the evidence in the record that the division was unjust and unfair. As this court

explained in *Wallace v. Wallace*, 623 S.W.2d 723 (Tex. App.—Houston [1st Dist.] 1981, writ dism'd):

> It is the responsibility of the parties to the suit to produce evidence of the value of various properties in order to provide the trial judge with a basis upon which to make the division. One complaining of the action of the trial court in dividing the property must be able to demonstrate from the evidence in the record that the decision arrived at is so unjust and unfair as to constitute an abuse of discretion.

*Id.* at 725; *see also Aduli*, 368 S.W.3d at 820 (holding that a party who failed to provide valuations of the marital estate may not complain about the division on appeal); *Vannerson*, 857 S.W.2d at 670 (same); *LeBlanc v. LeBlanc*, 761 S.W.2d 450, 453 (Tex. App.—Corpus Christi 1988, writ denied) (same). Despite the opportunity to do so at trial, Saheed presented no evidence of the value of the property in the marital estate. Saheed presented no evidence of the value of the marital residence, his accounts, his businesses, his indebtedness, the vehicles possessed by the parties, or any of the property assigned to either party. Now, on appeal, he complains about the "unequal" division made by the trial court. But he cannot demonstrate from the evidence in the record that the trial court's division is unequal, let alone an abuse of discretion, because he did not present evidence of the value of the property at trial. Except for the value of Koren's retirement accounts, there is no evidence of the value of the marital estate on the record. Thus, there is no evidence in the record supporting his contention that Koren was awarded a disproportionate share of that estate.

14

Accordingly, we overrule Saheed's second issue.

## III.  Motion for new trial

In his third issue, Saheed argues that the trial court abused its discretion in denying his motion for new trial.  A trial court may grant a new trial for good cause, on the motion of a party or on the court's own motion.  TEX. R. CIV. P. 320.  "We review a trial court's denial of a motion for new trial for abuse of discretion." *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006).  Under an abuse of discretion standard, we view the evidence in the light most favorable to the trial court's actions.  *Imkie v. Methodist Hosp.*, 326 S.W.3d 339, 344 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  When we determine whether the trial court abused its discretion, we may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness.  *Clarendon Nat'l Ins. Co. v. Thompson*, 199 S.W.3d 482, 494 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  "Every reasonable presumption will be made on review in favor of orders of the trial court refusing new trials."  *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.3d 715, 721 (Tex. 2003); *Hinkle v. Hinkle*, 223 S.W.3d 773, 783 (Tex. App.—Dallas 2007, no pet.).  There is generally no abuse of discretion when there is some evidence to support the trial court's decision.  *Hinkle*, 223 S.W.3d at 783 (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

15

In his motion for new trial, Saheed complained that the trial court had failed to divide the community property in a fair and just manner and that it failed to properly calculate child support. In the motion, Saheed also alleged that his annual income was only $22,000, contrary to the trial court's determination. At the hearing on the motion, Saheed explained that he wanted to introduce a summary of the deposits to his account demonstrating that his income was lower than what the trial court initially determined, and he was not attempting to introduce new evidence.

But Saheed already had the opportunity to address the issue of his income because that issue was raised in trial. Moreover, a new discussion of the bank account evidence already introduced at trial does not qualify as newly-discovered evidence that would justify a new trial. *See Patriacca v. Frost*, 98 S.W.3d 303, 307 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Newly discovered evidence is that which was not, and could not have been, discovered using reasonable diligence. *Id.* Finally, as determined above, the evidence introduced at trial is sufficient to support the trial court's judgment. Accordingly, the trial court did not abuse its discretion in denying the motion. *Id.* We overrule Saheed's third issue.

## IV. Findings of fact and conclusions of law

In his final issue, Saheed contends that the trial court's judgment should be reversed because the court failed to file findings of fact and conclusions of law as

16

he requested. Texas Rule of Civil Procedure 297 provides that "[t]he court shall file its findings of fact and conclusions of law within twenty days after a timely request is filed." TEX. R. CIV. P. 297. When a party files a request for findings of fact and conclusions of law before the trial court signs its judgment, then such a premature request shall be deemed filed on the date of, but subsequent to, the judgment. *See* TEX. R. CIV. P. 306c; *Echols v. Echols*, 900 S.W.2d 160, 161 (Tex. App.—Beaumont 1995, writ denied). If the court fails to file timely findings of fact and conclusions of law, the requesting party must file a "Notice of Past Due Findings of Fact and Conclusions of Law" within 30 days of filing the original request to avoid waiving any issue concerning the trial court's failure to file findings of fact and conclusions of law. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 410 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Saheed properly requested findings of fact and conclusions of law when he filed a request for them before the entry of the decree and then filed a past due notice to the trial court within 30 days.

When findings of fact and conclusions of law have been properly requested, a trial court's failure to file findings and conclusions is presumed reversible error, unless the record affirmatively shows that the requesting party was not harmed by their absence. *Alsenz*, 101 S.W.3d at 651–52 (citing *Tenery v. Tenery*, 932 S.W.2d

17

29, 30 (Tex. 1996)). "If a party is prevented from presenting his case on appeal, he has been harmed." *Id.*

Saheed has not been prevented from presenting his case on appeal. The basis for the calculation of Saheed's income and the amount of the child-support award was apparent from the evidence presented at trial: Koren's testimony about Saheed's past income and businesses; Saheed's testimony; and the account statements introduced by Koren. The record was also clear that Saheed failed to meet his burden to introduce his own evidence contravening Koren's assessment of his net resources. The divorce decree set out how the marital property was to be divided between the parties. As discussed above, Saheed was able to challenge the trial court's basis for determining the child support award. Thus, he was not forced to guess as to the basis for the trial court's decision and was thereby not harmed on appeal. *See Sheldon Pollack Corp. v. Pioneer Concrete of Tex., Inc.*, 765 S.W.2d 843, 845 (Tex. App.—Dallas 1989, writ denied) (holding that the test for harm in failing to file findings of fact and conclusion of law is whether the appellant is required to have to guess the reason the trial court has ruled against him).

Also, as discussed above the record demonstrates that Saheed was not harmed by the absence of findings of fact and conclusions of law in his challenge to the trial court's division of the marital estate. The record affirmatively shows that he waived any challenge to the trial court's division, because it demonstrates

that Saheed failed to meet his burden to present evidence of the value of the marital property. Accordingly, he cannot have been harmed by the trial court's failure to file findings of fact and conclusions of law on that issue. As he has not been harmed on appeal, we overrule Saheed's complaint concerning the findings of fact and conclusions of law.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.